**BARRON v. UNITED STATES.**
Congressional No. 17870.

United States Court of Claims.

Jan. 5, 1954.

Robert T. Murphy, Troy, N. Y., for plaintiff.

Arthur E. Fay, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, and MADDEN, Judges.

WHITAKER, Judge.

This case is before us under Senate Resolution 216, 82d Congress, 1st Session, referring to us the claim of Thomas Barron, for a report on whether or not the petitioner has a claim against the United States either legal or equitable, and, if so, the amount legally or equitably due.

His claim is for the loss of his tools and typewriter repair parts as the result of a fire on October 15, 1948, which destroyed one of the 1600-odd buildings at the Quonset Naval Air Station, near Providence, Rhode Island.

On July 16, 1948, plaintiff had entered into a contract with the defendant for the repair on the premises of approximately 900 typewriters owned by defendant at this station and on board Naval vessels berthed thereby, and for the overhauling and reconditioning at plaintiff's shop of about 50 typewriters. The bulk of the work was to be performed on the premises.

In the course of the performance of his work plaintiff took his tools and parts back and forth in his automobile, but when he continued to encounter difficulty in getting by the guards on leaving the premises with these things in his car, the defendant furnished him space in the building which was later destroyed by fire, where he could leave his tools and parts and where he could also perform that part of the contract work which called for the overhauling and reconditioning of 50 typewriters at his shop. This arrangement seems to have been to the mutual advantage of the parties.

It can hardly be called an amendment of the contract, because the place where the work of overhauling was to be done

was not of the essence of the contract. Defendant was interested only in the satisfactory performance of the work and not where it was done.

When the building was destroyed by fire plaintiff lost all of his tools and repair parts. The issue presented is whether or not the fire was the result of defendant's negligence. Plaintiff, of course, was not a trespasser in the building, but was an invitee, or at least a licensee, and, hence, was due from defendant the exercise of ordinary care. If ordinary care was not exercised by defendant, it is legally liable to plaintiff, except for the lapse of time.

The fire was started by the flame from an acetylene torch being used to repair a tank in which the grease and oil on airplane engines had been cleaned off. This tank sat down below the level of the floor of the hangar and when being used to clean engines contained some sort of solvent for the removal of grease and oil. The engines were immersed in this solvent. The grease and oil removed from the engines settled to the bottom of the tank and ran off through a pipe to an outside submerged tank. Some of the oil and grease, however, of necessity remained in the tank.

The tank needed repair and one of defendant's civilian employees, an assistant welder, was sent down into the tank with an acetylene torch to repair it. Beforehand, the tank had been cleaned to a certain extent by scraping off some of the remaining grease on the sides and bottom by hand, but, even so, there remained a certain amount of oil and grease, which emitted highly inflammable fumes. The whole surrounding area was a fire hazard, where smoking was prohibited.

The acetylene torch, of course, had an open flame and, hence, there was great danger that the fumes from the oil and grease might be ignited by the flame

and a fire started. The assistant welder did not like the idea of going down into the tank. To use his words, "There was a big sign over my head that said 'No smoking,' and there I was, welding; and so I said, I didn't like the idea." He requested that a trained fireman be placed as a special guard at the tank while the work was being done, but was informed that no fireman was available. They did, however, place a civilian metalsmith as a guard at the edge of the tank equipped with a 15-pound Co–2 fire extinguisher, and the assistant welder was furnished with a similar fire extinguisher.

The assistant welder cut two holes and was cutting a third one in the tank when a fire broke out. He emptied his fire extinguisher on the fire, and the guard did likewise, but the flames spread. The workmen undertook to cut off the blower provided to take fumes out of the building, but the switch to this blower was out of reach and it could not be cut off. It produced a draft, which fanned the flames, and the fire quickly got out of control, and the building was completely destroyed, and with it plaintiff's tools and parts.

There was maintained at the base a fire department with ordinary fire department equipment. The chief of this department had offered his services to the overhaul and repair department, where this tank was located, but his services had never been utilized and, as stated, no fireman was requested as a guard over this particular work. Not only that, but for some unexplained reason, considerable time elapsed after the fire started before the Fire Department was called. However, the Fire Chief testified that the precautions taken at the time this work was being done were the customary precautions being taken at that time. Since then much stricter precautions are required, and, indeed, no work of this character is allowed without a permit from the Fire Department.[1]

1. "When the steede is stolne, shut the stable durre." The French proverb reads: "Quant le cheval est emblé dounke ferme fols l'estable." Translated into English this means: "When the horse has been stolen, the fool shuts the stable."

The Fire Chief testified in this case that this fire could have been avoided by the taking of proper precautions. There is no doubt in our minds that this is true, and we have found it as a fact. It seems to us to have been almost fool-hardy to have sent a man down with an open flame in an area filled with fumes from oil and grease, with only these two fire extinguishers available. The work had to be done, of course, but such precautions should have been taken as would have prevented a fire, if started, from getting out of control, and the proof is that adequate precautions could have been taken, and, indeed, today are being taken.

 We think the defendant was negligent and should pay plaintiff whatever damages he may have been able to prove.

It is true plaintiff could probably have maintained an action in the District Court under the Tort Claims Act passed August 2, 1946, 28 U.S.C.A. §§ 1346, 2671 et seq., but he allowed the statute of limitations to run against him. He is hardly to be blamed for this, however, since the statute was new and was not commonly known. His failure to bring such an action should not prejudice him now.

The principal difficulty in the case is the amount of plaintiff's damage.

The Commissioner has found that it is reasonable to conclude from the evidence introduced that the value of his tools, equipment and parts lost in the fire was $1,969.79. Plaintiff claims $5,286.93. He has no records to support this because his records were destroyed in the fire, which was not his fault, and for which he should not be prejudiced. The amount claimed is an estimate. It is made up from his recollection of the tools and parts which he had in his shop, supported by the recollection of two of his employees, one of whom was his brother. The valuation of the tools and parts was on the basis of the prices therefor listed in a catalogue of a reputable supplier.

■ We think his estimate is too high. On his income tax return plaintiff claimed only $210 for the loss of his tools. the balance of the $5,286.93, would, therefore, have to consist of parts lost. However, in the years 1948 and 1949 plaintiff spent a total of only $1,875.82 for parts. He did not necessarily replace in the following 14 months all of the lost parts, but the replacement of only $1,-875.82 worth is some indication that plaintiff's valuation of the parts lost was too high. The amount spent for replacement is about one-third of what he claims. We think that an allowance to plaintiff of $3,000 would be enough to cover his loss.

Our conclusion is that plaintiff is justly and equitably entitled to $3,000 for the loss he sustained. There is no legal liability, due to the running of the statute of limitation.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

**EDGERTON v. UNITED STATES.**
**No. 49525.**

United States Court of Claims.
Jan. 5, 1954.

